May it please the Court, my name is Jessica Barnett. I'm an Assistant Attorney General from the Commonwealth of Massachusetts, and I represent two defendants on appeal here today. Defendant Aaron Donnelly, who is a County Prosecutor in Massachusetts, and Defendant Kevin Burke, who is a former Secretary of the Massachusetts Executive Office of Public Safety and Security. For the benefit of our audience here today, I will give a short summary of the facts. We know the facts. In that case, Your Honor, I'll proceed directly to the issue on appeal. We're here on interlocutory appeal of a very narrow issue, which is whether the discretionary decision of Massachusetts prosecutors not to extradite Daniel Tavares from the State of Washington is entitled to absolute immunity. And as this Court is well aware, it's well established that prosecutors and other State officials who perform prosecutorial functions are entitled to absolute immunity with respect to functions intimately associated with the judicial phase of the criminal process. Now, what does that mean? As this Court has observed, determining what functions are prosecutorial versus administrative can be an inexact science. But one touchstone that this Court has looked to and that the Supreme Court has also looked to is whether the decision or function necessarily requires legal knowledge and the exercise of related discretion. Now, one such decision that's been accorded absolute immunity since the seminal case of Imbler is the decision whether and when to prosecute in the first place. And the reason for that, of course, is that prosecutors must be able to exercise their discretion with courage and independence. They make decisions every day that affect lives in very profound ways. As this Court noted in Roe v. San Francisco, if we are to accord absolute immunity to the decision to prosecute, it must also be afforded to decisions not to prosecute. Otherwise, the decision itself would be affected if to decide one way was to expose oneself to liability and to decide another way would not. The very nature of the inquiry would be affected by that legal threat of liability in a civil suit. With respect to the decision here — Is there any relevance to a recent bank decision in Lacey v. O'Farrill? In Lacey v. Maricopa County, this Court basically reaffirmed, again, that this is a functional inquiry. The latest pronouncement from this Court on Imbank, no less. That's correct. And I know Your Honor dissented in part from that decision. But, again, the majority opinion did affirm quite strongly, and I know you joined it in part, that, again, prosecutorial functions. In that case, there was a special prosecutor who was a defendant, as well as a prosecutor who made the appointment. Now, the special prosecutor in that case was not entitled to absolute immunity where he acted completely ultra-virus, basically, in doing grand jury subpoenas without following the process, without going through the rules that are laid out that you need the approval of the grand jury or a court. Nothing of that kind is alleged here. We're talking about the decision of a prosecutor whether or not to extradite an individual on pending charges. There's no allegation, as there was in Lacey, that the prosecutor went outside his or her prescribed role and the procedures that are set forth. Rather, this is just the very basic core of prosecutorial discretion, which cases is the office going to pursue. And in that case, it is very similar to the court decision whether or not to prosecute, which this court has, again... So, in your view, the decision to extradite is the same as the decision to prosecute? In all material respects, yes, Your Honor. For this inquiry, it's the same in the sense that we do not want that decision to be influenced by a fear of civil liability. And certainly, plaintiff's suggestion that while the decision to prosecute is intimately associated with the judicial process, a decision not to extradite is not because it doesn't lead to a trial. But that turns the policy of absolute immunity on its head because, again, it would create a situation in which a prosecutor sitting down with that decision, do I extradite this individual or do I not, that is going to creep in. Well, if I decide one way, I'm exposed to liability. If I decide the other way, I'm not. We don't want that consideration to come into these decisions that are made daily, day in and day out by these officials. I'm sorry. Thank you. Just quickly, your comments keep hearkening back to the role as a prosecutor, but these defendants weren't all prosecutors. Do you want to speak to that? Certainly, Your Honor. You'll notice in the relief requested, we are asking that this apply, that this court make a functional ruling. That is, whoever is alleged to have participated in this decision would be entitled to the immunity. Now, we are at the stage of a motion to dismiss under Rule 12b-6, so we're taking the allegations of the complaint as true. So whether or not this happened in fact, all of these defendant appellants are alleged to have participated in the decision. What about the Ninth Circuit case law in Frye and Flood, the case law where our court held that, to the contrary, where it was impossible that a certain person didn't have the authority to make a decision that was challenged, that that would not be a decision that would involve any grant of immunity? Well, I hope I'm answering Your Honor's question. If this were an allegation that a defendant acted sort of outside their official role and did something, they may not get immunity for it. But all we have at this point is the allegation that this group of people made this decision. In fact, my alternative suggestion would be to this Court that you don't have to take these conclusory allegations as true when there's a specific factual allegation in the complaint at paragraph 4.17 that says, On September 4, 2007, Defendant Range spoke with Defendant Donnelly, who said the Worcester County District Attorney's Office would be reviewing the matter basically to reassess their extradition decision. This is clearly a prosecutorial function, one that prosecutors performed. What we have are those bare allegations that essentially every defendant made this decision. So either we say, please make a functional ruling and say, whoever is alleged to have participated in this liability cannot hinge on this particular function, or alternatively, you know, we sort of recognize these conclusory allegations are lumping defendants into one group, but really the more specific factual allegations show us this was a decision by prosecutors. Either approach would get us the result we want. Again, it's a functional test. It shouldn't depend on the title of the defendant. Let me ask you this. You've analogized the decision whether to extradite to the decision to prosecute, but why isn't it more similar just to a more routine decision that a prosecutor might make about whether to take a particular defendant who's been charged into custody, perhaps whether to issue an arrest warrant for someone who's been indicted as opposed to just issuing them a summons? That to me is more what this is about in terms of the decision whether to extradite, and I'm not sure that you would get, as a prosecutor, absolute immunity for those more routine decisions that occur after someone has been indicted. Can you discuss that a little bit? I would answer Your Honor's question in two ways. First, I do believe it is analogous to the decision whether to prosecute because you take the same considerations into account. So when you're initially deciding whether to charge a suspect, you have to think about the nature and circumstances of the crime, the evidence available, what the strength of that evidence is, and whether it's a case that should be brought to trial. But the defendant here was, or not the defendant, but I can't remember his name, the person who ended up murdering the plaintiff's family members. He had already been charged. The decision had already been made to prosecute him. The only question was whether do we want to hurry up and bring him back or basically leave him to, you know, we'll sort of get to him when we get to him, right? Yes, Your Honor, and what I would submit is that when circumstances change in this way, when a defendant who was in the jurisdiction is no longer in the jurisdiction, you do a similar analysis but adding that new fact. So how does that change your calculus when you have a defendant out of the jurisdiction? Whether it's going to be a case that warrants extradition is going to depend on the strength of the Commonwealth's evidence, the nature of the crime, and all of those same factors that prosecutors have to take into account when deciding how to allocate the resources of the office and how to prioritize a prosecution. So if the decision, you know, do we null press the case, that can happen after an initial charge is brought. There can be change in circumstances where a case is null pressed. That's a discretionary decision, again, taking in all those factors. I guess I could understand that, but on the allegations here, there was a decision made to basically extradite him as long as he came within, what was it, the New England states or something? I just don't understand what was the rationale for that decision if, in fact, that was made? Well, I have to say the record, of course, does not contain that information, and that is for good reason, right, which is that we don't want these decisions put under the microscope. That's what the whole absolute immunity doctrine is there to do. It's to say, look, whether or not to bring charges, whether or not to null press a case or extradite a defendant, these are decisions we don't want to be put under this lens. So I don't have information as to the specific decision. What I can comment on, as I have, is the general types of considerations that would come into play. Well, I'm not sure I can accept your answer, actually, given our decision in outfit. Sure. If, in fact, the decision was made to allow this person to remain on the loose, so to speak, so that you could continue your investigation, right, I think Al-Kid would tell us that you're not, you would not be entitled to absolute immunity because that would be an investigative function. If the Court doesn't mind adding some clarity to what investigation would be continuing, I don't know, to continue investigation of him? Right. I mean, there are certainly all kinds of crimes one could commit in Washington State for which you could be prosecuted back in Massachusetts. I'm just saying that I agree that there's no indication in the record here as to why the decision was made, but your answer that, well, somehow we're not supposed to look at that, I don't think we can square that with Al-Kid. Counsel, it seemed to me that, to follow up on Judge Watford's question, one of the suggestions to me in the record is that he was being watched, this person who committed this crime was being watched because he'd made threats in the past against then-Governor Romney and the Attorney General from the State of Massachusetts,  So I think the record tells me that the instruction from Massachusetts was to keep an eye on this person, for example, and to continue to investigate along that vein. So would that change your answer? It wouldn't. So first of all, I'll address Your Honor's comment about Al-Kid. I don't believe that is inconsistent with Al-Kid. In Al-Kid, this Court was very clear when we're talking about assessing the immediate purpose behind a decision. To use a particular prosecutorial tool or tactic, was it investigative or was it prosecutorial, not whether, for example, there was some improper motive behind it. And I feel that this complaint, the substance is they're alleging the motive for which they did it was improper. In other words, the allegations are they did this to wash their hands of a dangerous criminal and that's improper reason for doing it. Al-Kid does not inquire into that. Al-Kid looks to, you know, if we're talking about a particular tool, a witness interview, a material witness warrant that could be used for an investigation, could be used in connection with bringing someone to trial, we look to it solely for that reason, to help us in the function test, investigative or prosecutorial. Now, to get to Your Honor's question, yes, even going by the allegations complaint, there were two things going on here. One was an investigation regarding threats to public officials, and the other was this individual had pending charges in Massachusetts. Now, declining to extradite him would not further any goal of the former investigation. In fact, if they were concerned about keeping tabs on him and controlling his whereabouts, the answer would have been to extradite him and to take him into custody. So the allegation that this served an investigatory purpose, it did not further any goal that I can see of keeping tabs on this individual. But you would concede then that if, in fact, the reason the decision not to extradite was made here was in order to allow the police to continue some kind of ongoing investigation back in Massachusetts unrelated to the charges that were already pending, you would concede there's no absolute immunity for that, right? Again, I would say no, Your Honor, for this reason, which is that you're talking about an omission to perform an act versus the use of a procedure for an investigatory purpose. So you're talking, you're saying we can tell by your absence of action that you are intending to further a goal of this investigation. I think that is a very difficult standard to implement, and it would be very difficult for prosecutors to take guidance from that. Al Kidd, on the other hand, the allegations there was that the Attorney General was using material witness warrants, basically for national security purposes, to preemptively detain individuals, not for the reason that those warrants are normally used, but just to detain them for their own purposes in investigating them for national security reasons. That is very different from saying your failure to act, we will attribute a motive to it and then subject you to extensive discovery and expose you to potential civil liability. Again, that's going to cause the very sort of fear of exposure to prosecution that's going to affect these decisions going forward, and that's why absolute immunity exists. We do not want prosecutors sitting down. Thank you, Counsel. Thank you, Your Honor. If there are no further questions, I would rely on the briefs for the remaining points. We didn't let you sit down when you had plans, so if co-counsel would like to take those two minutes at this point, the rest of the time will be on us. Thank you very much, Your Honors. May it please the Court, Michael Brennan on behalf of Lieutenant Richard Range. Your Honor, getting to your question with respect to the issue of whether or not or why we're here with respect to the non-prosecutorial actors, I think it's essentially the reason that we're here with respect to Lieutenant Range, then Sergeant Range, Massachusetts State Police, is because of the way in which the complaint is framed. The complaint is framed in such a way as to basically lump all of these people together to provide one group, basically groupthink, that they all kind of got together, they all kind of conspired together to come up with this plan. And if that is true, and at the point that we're at right now, we have to take the plaintiff's complaint at face value, then Lieutenant Range stands as if he were providing information or acting as a prosecutorial aide or functionary. And along with respect to the functional approach, they were providing a prosecutorial function with respect to whether or not to extradite. To your question, Your Honor, with respect to whether or not this gets to the issue of an ongoing investigation or not, I would suggest that with respect to the pending matters that had been brought, I believe two or three years before Mr. Tavares was actually released from Massachusetts prison, whatever investigation into those matters were done, there's nothing in the record that suggests it involved the Massachusetts State Police. There's nothing in the record that suggests that there was any investigation going on with respect to those matters. The issue is whether or not, based upon the plaintiff's complaint, that they were providing that all of the defendants were essentially providing and getting together to come to a decision as to whether or not to prosecute Mr. Tavares, whether or not to bring him back to the Commonwealth. Thank you. Thank you, Your Honor. We'll hear from the other side. May it please the Court. My name is Ana Price, and I'm here on behalf of the estates and families of Beverly and Brian Mock, who were killed in their home by Daniel Tavares in 2007. I'd like to start out just by answering a couple of questions that were posed by the Court. First and foremost, Lacey v. Maricopa County is squarely on point. And in my opinion, decides the issue completely. It's squarely on all fours with this case. And the fundamental holding in Lacey is that where the prosecutor is avoiding the judicial process, absolute immunity doesn't apply. And that's exactly what happened here. Their goal was to leave Daniel Tavares in Washington, and their goal was to maybe prosecute him if he came back to the New England states. But you make it sound so bad. But what's wrong with that? They take their responsibilities to the people of Massachusetts, and they decide, given the cost of extradition and the risk of transporting a prisoner across from one end of the country to the other, that the people of Massachusetts would be best protected by not extraditing him. What's so bad about that? I mean, how is that in any way analogous to what happened in Lacey? I think that in a case like this where the decision to prosecute has been made, then the prosecutor has to follow through with the extradition. Has to? Says who? That's our position, Your Honor. Well, I understand it's your position, but why should it be my position? Do you mean has to follow through with extradition in order to be entitled to immunity, to be further in prosecution, or am I misunderstanding you? No, I believe the court understands me correctly. Well, I don't. Is that what you mean? That is what I mean, Your Honor. Well, but you have to violate some sort of duty in order to give up immunity as a prosecutor. You say there's some external duty that he had that he or they or whoever the prosecutors were didn't fulfill, and I don't understand it. Why can't the prosecutor of Massachusetts make a decision? We're just not going to spend the money. We don't want to spend the money. We don't want to spend the time. We don't want to spend the resources of the people of the commonwealth to get this guy who's not going to be anywhere near any of our people. Well, in this case, what I was trying to say is that the immunity is off the table. It's not a question of whether they were deciding to prosecute, that decision had been made. But in this case, when they're stepping away from the watchful eye of the judge and they're investigating him because of national security concerns, absolute immunity isn't triggered in a case like this. I'm sorry? In a case where they are undertaking an investigation because of threats that he had made to Governor Romney in order to figure out his location, absolute immunity is not triggered in a case like this. Why not? Why isn't it just like any other decision? Say, look, we decided to prosecute, but, you know, got lots of cases to prosecute, and we are going to allocate resources. It's just not a high priority for us. We've looked at the people of Massachusetts and the people of the commonwealth and where we should spend our resources protecting them, and this is just not high enough priority. So we're not going to spend a lot of time on this. We've got lots of other cases that we'd rather spend money and resources on. How is that decision as to how intensely to prosecute and how many resources to devote, how is this any different than deciding whether you're going to assign an experienced prosecutor or give it to a rookie? Sometimes a prosecutor will say, you know, we could afford to lose this case, so we'll give it to the new guy. And if, you know, the new prosecutor loses it, well, that's just what happens. He will learn the lesson. Is that the kind of decision that's not subject to immunity? Are immunities off the table because you didn't put your best guy on the prosecution team? When the question is whether or not to prosecute, we have precedent in the Ninth Circuit, Roe v. San Francisco, holding that that decision whether or not to prosecute to file the initial prosecution is protected by absolute immunity. Well, but I was asking a different question. What if we decide I'm going to prosecute, but I'm going to do it badly? I'm not going to give it the best prosecution possible. I'm going to use somebody who's inexperienced. I'm going to assign a few resources. Instead of having an investigator, we'll rely on police reports and so on. We're just not going to spend a lot of resources doing it because it's not a very important case. To our people, there are more important cases. We've got limited resources. Why isn't this kind of decision? Are you arguing that that kind of decision would not be subject to absolute immunity? Well, the difference in the – No, I'm asking my question. You answer my question, and then we can go on to your – Do you think the decision to give a sort of second-string prosecutor on the case, you think that's subject to absolute immunity or not? It probably would be subject to absolute immunity because – Well, how is this any different? Saying, look, we can extradite, and if he gets close enough to us, we'll do it. But we just – you know, it's expensive to extradite somebody all the way from far away Washington, so we're just going to put a second-string team on this. It's just not important enough. How is this different? The difference is the fact that the – it's probably answered by all kid. The difference is that the goal – is looking at the goals and purposes. In your scenario, you're actually – you're undertaking the prosecution, and there are other safeguards available to watchful eye of the judge. It's actually a judicial act. But once – I'm sorry, what's a judicial act about deciding you're going to put the second-string guy on the job? The judge watches that? You think, you know, the DA – was it the DA? The DA goes to the judge and says, is it okay if I put this inexperienced prosecutor, you know, first trial ever on the case? No, that happens in the office. That's the kind of decision prosecutors make all the time. How is this different than saying, look, if he gets close enough for us to catch him, if it gets to any of the New England states that he's close enough, we'll snag him. But otherwise, eh, we don't care. It's just not important enough. The difference is that absolute immunity is triggered when a judge is – for the most part, when a judge is overseeing the actions. But it's not true. I mean, it's just not true. I just gave you an example. They decide to not devote a lot of resources to the case. That decision is made in the office. They put a rookie prosecutor on it. They decide no investigator. They decide, you know, you're not going to have, you know, a lot of time to prepare. We'll give you just – you know, we'll hand you a file as you walk in the courtroom and you do your best, sink or swim. That kind of decision is not subject to any supervision. That's an office decision that the DA makes in light of his responsibility and his budget. That's it. The difference is that there are protections in place in the form of post-trial motions and pre-trial motions that are available to judge. I'm sorry. When a prosecutor loses a criminal case, in America we don't – there are no remedies. It's gone. It's dead as a doornail. If they try the case badly and they lose, it's called double jeopardy. You've heard of it? Yes. Okay. So there's no post-trial motions. It's gone. Why? Because we had a rookie prosecutor and they've only done a better job. Too bad. It's gone. Can you then go ahead and sue the DA and say, boy, you should have put your ace prosecutor on there? That case could have been won, should have been won, and you lost it because you just decided it wasn't important enough. You can't do that. Judges don't get involved in that. I agree, Your Honor, that in that case absolute immunity would apply. But the difference is that when state actors, the actors in this case, undertook to avoid the judicial process, absolute immunity comes off the table. Maybe I could ask it this way because this is what's bothering me. Your brief, and it's, I think, very closely aligned with what Chief Judge Kuczynski is getting at. Your brief represents this as, characterizes the fact pattern as the decision not to extradite. But I think what happened is that there was a decision to extradite, but only from a very limited area. Correct. Maybe for the kind of resource prioritization issues that Chief Judge Kuczynski mentioned, maybe for other reasons, we don't know. But it seems to me that it wasn't necessarily a decision to, it wasn't a decision to not extradite. It was in furtherance of a prosecution, but they just decided we're going to do this in a limited scope. Only if he gets this close. So it will only cost this much. If that's a correct statement of the facts, why would we be wrong in characterizing it that way and ruling that this is a step taken in the furtherance of the prosecution? Well, at this point, as counsel recognized, we've been unable to do any kind of discovery. And so getting to the motives and the goals and the thought process of the state actors is something that we don't have available to us. And it's my opinion that as the facts are set forth in the complaint, absolute immunity was not triggered based on the fact that they went outside the purview of the judicial system and they were actually fulfilling an investigative purpose for national security reasons. Did they go outside because they, I think you want us to view this as not extraditing, or did they go outside for the reason that Judge Watford raised, that they were continuing an investigation, maybe, since we would need to deem the facts in the complaint as true, because they were continuing to investigate this other matter about threats as to then-Governor Romney? Which is? It's most, from the limited information that we have, it appears that they were undertaking an investigation for the fact, based on the fact that Romney was going to be in Washington, and they knew that Tavares had made threats against him and against the former Attorney General previously. So their purpose was national security-focused. Why is it significant that the entry in the NCIC, the National Crime Database entry, was for officer safety only? Why is that significant? It's significant because they were aware of how violent Tavares was, and the fact that he had affiliations with white supremacist groups. He stabbed his mother to death. So they were aware of how violent he was and what his propensities were. So what? I mean, that's the kind of judgments that prosecutors make all the time. They decide, based on all the facts, including the history of the suspect, whether or not this is prosecuting this person, and how vigorously it is going to serve the people of the Commonwealth. That's all their charge was doing. And if they decide the guy may be perfectly dangerous, but he will be dangerous somewhere else, not any of our concern, why isn't that a legitimate prosecutorial decision, just like any other? Well, it's significant. What if you're in Japan? Would Massachusetts be required to get the State Department to do an international expedition? They say, oh, Japan. We're great. Glad he's crossed the pond. Never darken our doorstep again. If they were investigating him and he was in Japan and they confirmed that those were his whereabouts, then their decision not to prosecute him and not to extradite him back to Massachusetts just would not be protected by absolute immunity. Really? Really? They would have to go to the State Department, invoke whatever expedition Katie would have with Japan? The analysis is the same. A hugely expensive endeavor involving relations between the two countries? Do they have to do all that to keep themselves from being sued? Wow. That's really a big chunk. You're biting off a lot. I see that I'm over my time. I'm not sure if this works. Oh, no, you're not over your time. You're over your time when I tell you you're over your time. Okay. So long as our question is from here, you're trying to stop me. Do you have a follow-up on that? No, no. I do have another question. It's probably an appropriate one to ask at this point. If we don't agree with your position on absolute immunity and we end up reversing this, is there some portion of your claim, some theory that still survives that allows you to go forward, or is your case over at that point? I guess it depends. If the court finds that it applies to specific actors, then the claim would be. Just to be clear, if we hold that the decision not to extradite this gentleman from Washington State, that everybody who was involved in that decision is entitled to absolute immunity, is there some other theory that you've got for going forward on your claims, or does that put an end to the case? That would put an end to the case, Your Honor. That ends the inquiry. Okay. Thank you, Your Honor. Thank you very much. The case is on. You will stand submitted.
judges: Kozinski, Christen, Watford, Cjj